UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TONYA J. CARTER,            )  | |
|                             )  | |
|        *Plaintiff*      ) | |
|                             ) | |
| v.                          )       | *Docket No. 05-38-B-W* |
|                             ) | |
| JO ANNE B. BARNHART,         ) | |
| **Commissioner of Social Security,**  ) | |
|                             ) | |
|        *Defendant*     ) | |

***REPORT AND RECOMMENDED DECISION[1]***

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises two issues, contending that all of the jobs found by the administrative law judge to be within her residual functional capacity are in fact beyond that capacity and that her borderline intelligence should have been found to be a severe impairment. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative judge found, in relevant part, that the plaintiff had impairments[2] that were considered severe but which did not meet or medically equal the criteria of any of the impairments listed in

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on November 29, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

[2] Specifically, the impairments were status post pacemaker installation with subsequent repair, asthma, depression, anxiety, myofascial

(*continued on next page*)

1

Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 24; that her allegations concerning her limitations were not totally credible, Finding 5, *id*.; that she had the residual functional capacity to perform only simple repetitive tasks, to lift and carry up to ten pounds frequently and ten pounds occasionally, sit about six hours in an eight-hour workday, and stand or walk for about two hours in an eight-hour work day, with the option to sit or stand at will, while avoiding concentrated exposure to dust, fumes, strong odors and temperature extremes, Finding 7, *id.*; that she was unable to perform her past relevant work, Finding 8, *id*.; that given her age (younger individual), education (limited), transferable skills and residual functional capacity to perform a significant range of sedentary work, use of section 201.26 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making yielded the conclusion that there were a significant number of jobs in the national economy that the plaintiff could perform, including surveillance system monitor, counter attendant, press feeder, fast food restaurant worker, and food checker, Findings 8-13, *id*. at 24-25; and that the plaintiff therefore was not under a disability as that term is defined in the Social Security Act at any time through the date of the decision, Finding 14, *id.* at 25. The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.,* 76 F.3 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 380, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

pain syndrome in the groin area and pain of uncertain etiology in the sacroiliac area. Record at 19.

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1t Cir. 1986).

## Discussion

The plaintiff challenges all of the jobs listed by the administrative law judge as jobs within her residual functional capacity. Itemized Statement of Errors, etc. ("Itemized Statement") (Docket No. 5) at 2-6. In response, the commissioner concedes that all but the job of surveillance system monitor are inappropriate. Defendant's Response to Plaintiff's Statement of Alleged Errors ("Response") (Docket No. 10) at 4.[3] The plaintiff contends that the limitation to simple, repetitive tasks (Finding 7) rules out the surveillance system monitor job because the reasoning development level of 3 assigned to that job by the Dictionary of Occupational Titles is "far beyond the limitation to simple, repetitive tasks." Itemized Statement at 3-4. The definition of Level 3 reasoning development provides:

> Apply commonsense [sic] understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor 4th ed. 2000), Appendix C, Section III.

---

[3] In a departure from standard practice, the commissioner requested, and I granted, leave to file a memorandum of law in response to the plaintiff's statement of alleged errors in order to address the interaction between the specific vocational preparatory time ("SVP") and the general education development ("GED") reasoning level requirements that are assigned to specific occupations and, in particular, that of surveillance monitor. Docket Nos. 7 & 9. Such requests are not encouraged and should be made only in extraordinary circumstances where the oral argument protocol for social security appeals can be shown to be inadequate.

3

This court has twice dealt with this very issue. In *Hall-Grover v. Barnhart*, 2004 WL 1529283 (D. Me. Apr. 30, 2004), *aff'd* 5/24/04, *Hall-Grover v. Barnhart*, Docket No. 03-239-P-C (Docket No. 10), I concluded that the job of "security monitor," to which the DOT assigned a GED reasoning level of 3, was inconsistent with a limitation to simple repetitive work. *Id*. at *3- *4. In *Trebilcock v. Barnhart*, 2004 WL 2378856 (D. Me. Oct. 25, 2004), *aff'd* 11/15/04, *Trebilcock v. Barnhart*, Docket No. 04-18-P-S (Docket No. 11), the job in question again carried a GED reasoning level of 3, and the plaintiff had been found to be capable of performing a job "entailing no more than simple instructions, occasionally detailed, not complex," *id*. at *3 (internal quotation marks omitted). I reached the same conclusion. *Id*.

The commissioner has apparently chosen the present case as a platform to attempt to convince me and the court that my two previous decisions were erroneous on this point. She contends that a claimant limited to the performance of simple, routine tasks is "essentially limited . . . to unskilled work," and that unskilled work includes jobs given an SVP rating of 2 or less by the DOT. Response at 6. I agree that Social Security Ruling 00-4p, cited by the commissioner, *id*., supports the latter portion of this argument. Social Security Ruling 00-4p,("SSR 004-p") reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004) at 245. It does not support the first element of the argument, however. All of the commissioner's presentation, Response at 6-11, is based on the assumption that a limitation to simple, repetitive tasks equates to a limitation to unskilled work. It does not. The commissioner's regulatory scheme addresses the skill levels of various jobs separately from a claimant's mental ability to perform only certain types of tasks. The need to determine whether a claimant has transferable skills bears this distinction out; this determination has nothing to do with the mental demands of the tasks performed or to be performed by that individual.

The commissioner dismisses *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), in which that court agrees with me, in a case involving the surveillance system operator job at issue here, *id*. at 1176, as a decision which "overlooks Social Security policy regarding the impact of vocational evidence, such as in the DOT, when evidence is inconsistent with SSA's own regulatory policies or definitions, such as the definition of and requirements for unskilled work." Response at 7 n.5.  With due respect, the commissioner has failed to demonstrate that any such conflict exists.  I am not willing to conclude that the commissioner's range of regulations, charts and Rulings dealing with transferable skills are superfluous for any claimant who has any mental limitations, which is the logical conclusion of the commissioner's argument here.  The commissioner's argument also conflates SVP and GED reasoning levels; a court must assume that the Department of Labor rates the two separately for a reason. The distinction is clear in the definitions of each provided by the DOT.  Another possible interpretation of the commissioner's argument is that the DOT's SVP ratings "trump" its GED ratings, a proposition unlikely to find favor with the Department of Labor and unlikely to persuade a court in the absence of any indication in the DOT itself that such a hierarchy of ratings was intended.  Further, the commissioner reads far too much into  20 C.F.R. §§ 404.1568(a) and 416.968(a) when she contends, Response at 6, that their reference to unskilled work as work which, in part, "needs little or no judgment to do simple duties" establishes Social Security "policy" on how to interpret the DOT.  When the commissioner wants to establish policy on the interpretation of the DOT, she issues a Ruling.  Thus, "[i]n making disability determinations," the commissioner has said, "we rely primarily on the DOT . . . for information about the requirements of work in the national economy."  SSR 00-4p, at 244.

Contrary to the commissioner's argument, Response at 10-11, neither *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002), *Warf v.  Shalala,* 844 F. Supp. 285 (W.D. Va. 1994), nor *Lawson v.*

5

*Apfel*, 46 F.Supp.2d 941 (W.D. Mo. 1998), requires a different outcome from that reached previously by this court.  The court's concern in *Donahue* was that the DOT makes literacy a basic requirement of every job in the national economy.  279 F.3d at 445.  It held that the commissioner could rely on the testimony of a vocational expert when it conflicted with the DOT with respect to a claimant's literacy.  *Id*. at 445-46.  In that case, it was obvious that the illiterate claimant had worked in the past and that illiterate individuals could perform satisfactorily in the jobs at issue.  Here, it is not obvious that the conflict between the administrative law judge's limitation to simple repetitive tasks and the DOT's assigned GED reasoning level for the job at issue may safely be ignored because persons so limited are doing that job every day.  At the very least, the administrative law judge was required to question the vocational expert about this discrepancy.  *See* SSR 00-4p.  His failure to do so constitutes another ground for remand.

Both *Warf* and *Lawson* deal with exactly the same issue as that presented in *Donahue*.  844 F. Supp. at 289; 46 F.Suppp.2d at 947.  Given that SSR 00-4p requires an administrative law judge to ask a vocational expert to explain any variances between his or her testimony and the DOT, I am not persuaded by the court's unsupported conclusion in *Warf* that "the 'definitional requirements' for the jobs listed in the DOT are merely advisory in nature and serve only as a reference for the ALJ and VE."  844 F. Supp. at 289.  Social Security policy makes the DOT much more than that.

Finally, the plaintiff contends, in a remarkably brief presentation, that the administrative law judge also committed reversible error when he failed to find at Step 2 of the sequential evaluation procedure that she suffered from borderline intelligence as a severe impairment.  Itemized Statement at 7. Assuming *arguendo* that this issue has been properly raised, *but see Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990), a plaintiff bears the burden of proof at Step 2, but it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of*

*Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-severity at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28). The commissioner's written submission does not address this issue.

The sole reference to the record made by the plaintiff with respect to this issue, Itemized Statement at 7, is to a page from the report of Willard E. Millis, Jr., Ph.D., a psychologist who evaluated the plaintiff at the request of the state disability determination service, Record at 222-24. In the middle of the report is a recitation of the IQ scores received by the plaintiff after testing and the statement that "[t]his places her in the borderline range of intellectual functioning and appears to be a valid representation of her current functioning status." *Id*. at 223. The administrative law judge noted that Dr. Knox, the state-agency reviewing psychologist, had found that the plaintiff's borderline intelligence was not a severe impairment. *Id*. at 19. The administrative law judge cited Exhibit 10F in support of this observation. *Id*. Exhibit 10F is actually the report of Dr. Houston, another state-agency psychologist, but that report does note Dr. Millis's findings and the borderline intelligence and concludes that the mental retardation is not a severe impairment. *Id.* at 208, 212, 220. Dr. Knox makes the same findings and conclusions in his report, Exhibit 12F. *Id*. at 225, 229, 237. The administrative law judge was entitled to rely on the reports of the two state-agency reviewers to the extent that they differed from that of Dr. Willis, although there is no indication in Dr. Willis's report that he found the borderline intelligence to be a severe impairment. Indeed, the administrative law judge included borderline intelligence in his hypothetical question to the vocational expert, Record at

51, making an error in failing to characterize the borderline intelligence as a severe impairment harmless.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for further proceedings consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of November, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge